# United States Court of Appeals
## For the First Circuit

No. 15-1509

A CORP. D/B/A ROOTER MAN,

Plaintiff, Appellant,

v.

ALL AMERICAN PLUMBING, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch,[*] Thompson, and Kayatta,
Circuit Judges.

Juan (Jenny) Liu for appellant.
Albert A. DeNapoli, with whom Matthew S. Furman, and Tarlow,
Breed, Hart & Rodgers, P.C., were on brief, for appellee.

January 27, 2016

---

[*] Judge Lynch heard oral argument in this matter and participated in the semble, but she did not participate in the issuance of the panel's opinion. The remaining two panelists issue this opinion pursuant to 28 U.S.C. § 46(d).

**THOMPSON**, **Circuit Judge**.  Plaintiff-appellant A Corp. appeals from the district court's dismissal of its trademark infringement action against defendant-appellee All American Plumbing, Inc. ("All American") for lack of personal jurisdiction. A Corp. argues that the district court had specific personal jurisdiction over All American because All American maintains an interactive website that is accessible in Massachusetts and caused injury to the trademark owner in Massachusetts.  We disagree and affirm.

## I.    BACKGROUND

On August 28, 2014, A Corp. filed this trademark infringement action against All American, alleging federal trademark infringement, false designation of origin, dilution, interference with contractual relation, unfair competition, and unjust enrichment.  A Corp. is a Massachusetts plumbing corporation and franchisor[1] that owns the federal registrations of the "Rooter Man" mark, "A Rooter Man to the Rescue" mark, and the "Rooter Man" words (collectively, the "Rooter Man marks"), which are registered for "cleaning and repairing septic systems and clearing clogged pipes and drains."[2]  In its complaint, A Corp. alleged that All

---

[1]  Although A Corp.'s principal place of business is Massachusetts, it has approximately 426 franchisees operating in the United States and Canada.

[2] In reviewing the district court's dismissal for lack of personal jurisdiction, we accept as true the allegations in the

- 2 -

American -- a family-run plumbing company located in Arizona -- was improperly using A Corp.'s Rooter Man mark, or one confusingly similar, to advertise its plumbing business on its website, www.allamericanplumbingandrooter.com, which A Corp. described as being "interactive" and continuously "accessible in Massachusetts." A Corp. claimed that All American's unauthorized use of the Rooter Man marks interfered with A Corp.'s franchise agreement with its Arizona franchisee, confusing its customers and prospective franchisees as to the possible relationship between the two companies.

All American, an Arizona corporation with its principal place of business in Mesa, Arizona, subsequently moved to dismiss for lack of personal jurisdiction and improper venue,[3] highlighting that it conducts business exclusively in Arizona, with no employees, property, offices, or bank accounts in Massachusetts. All American further noted that it is only licensed to provide plumbing services in Arizona and that its website, although widely accessible, solicits plumbing business solely in Arizona. And even then, All American explained, its website solicitations are limited to providing the email addresses and local phone and fax

complaint, construing the facts in the light most favorable to the plaintiff-appellant. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 24 (1st Cir. 2008).

[3] All American also argued, in the alternative, for transfer.

numbers for All American's three Arizona locations -- East Valley, West Valley and Phoenix. All American's website does not mention Massachusetts, and All American has never offered or provided any plumbing services in Massachusetts.

After consideration of the parties' submissions, including affidavits submitted by both parties, the district court granted All American's motion to dismiss, concluding that A Corp. had not met its burden to establish either general or specific jurisdiction. The district court determined that A Corp. had only offered allegations or evidence of two contacts between All American and the Commonwealth: (1) All American's website, which is accessible in Massachusetts (along with everywhere else); and (2) All American's lawyer's general appearance in the action.[4] Concluding that neither of these contacts were sufficient to establish jurisdiction, the district court specifically found that All American's website was not "interactive" and that it did not directly offer products or services for sale. Accordingly, the district court concluded that All American's website, standing alone, was insufficient to demonstrate that All American had purposefully availed itself of the forum.

---

[4] On appeal, A Corp. does not pursue its argument that All American's lawyer's general appearance established personal jurisdiction over All American.

- 4 -

A Corp. filed this timely appeal, challenging only the district court's conclusion as to the exercise of specific jurisdiction.

## II.    STANDARD OF REVIEW

We review de novo the district court's decision to dismiss for lack of personal jurisdiction.  Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008).

A Corp. bears the burden to establish that specific jurisdiction exists over All American.  Id.  Below, the district court employed the prima facie method to determine whether A Corp. had met its burden.[5]  Under this standard, "the inquiry is whether [A Corp.] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  Id. at 26.  It is not enough for A Corp. to "rely on unsupported allegations in [its] pleadings."  Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)). Rather, A Corp. must put forward "evidence of specific facts" to

---

[5] The other two methods are the preponderance method and the likelihood method.  Phillips, 530 F.3d at 26, n.2.  Unlike the prima facie method, the preponderance and likelihood methods generally require an evidentiary hearing.  Id.  "[T]he least taxing of these standards from a plaintiff's standpoint, and the one most commonly employed in the early stages of litigation, is the prima facie standard."  Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997).

demonstrate that jurisdiction exists.  Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir.1995)).

Reviewing a decision made under the prima facie standard, we must accept A Corp.'s properly documented evidentiary proffers as true and construe them in the light most favorable to A Corp.'s jurisdictional claim.  Phillips, 530 F.3d at 26 (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)).  But we will also consider facts offered by All American, to the extent that they are not disputed. Daynard, 290 F.3d at 51.

## III.   JURISDICTIONAL ANALYSIS

To establish personal jurisdiction over All American, A Corp. must meet the requirements of both the Massachusetts long-arm statute and the due process clause of the Fourteenth Amendment. Daynard, 290 F.3d at 52.

A Corp. asserts specific jurisdiction under Mass. Gen. Laws ch. 223A § 3(d), which extends personal jurisdiction to persons "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."  Id.  This Court previously has interpreted the Commonwealth's long-arm statute as coextensive with the outer limits of the Constitution.  See Daynard, 290 F.3d

- 6 -

at 52 (citing 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972)).  But in recent cases, we have suggested that the Commonwealth's long-arm statute may impose limits on the exercise of personal jurisdiction "more restrictive" than those required by the Constitution.  See Copia Commc'ns, LLC v. AMResorts, L.P., No. 15-1330, 2016 WL 147425, at *2 (1st Cir. Jan. 13, 2016); Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (citing Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d 76, 80 (1979)).  Having concluded, however, that the due process clause does not permit the exercise of personal jurisdiction over All American in this case, we need not untangle this potential "tension in our precedent here."  Copia Commc'ns, LLC, 2016 WL 147425, at *2.

The due process clause requires that to subject a nonresident defendant to jurisdiction within a state the defendant must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  For specific personal jurisdiction, the constitutional analysis has three distinct prongs: relatedness, purposeful availment, and reasonableness.  Phillips, 530 F.3d at 27.  As such, we must consider:

> (1) whether the claim 'directly arise[s] out of, or relate[s] to, the defendant's forum state activities;' (2) whether the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;' and (3) whether the exercise of jurisdiction is reasonable.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (alterations in original) (citing Daynard, 290 F.3d at 60-61). To succeed, A Corp. must demonstrate that all three prongs are met.[6] Id. Applying this test to the facts of this case, we conclude that due process does not permit the exercise of specific jurisdiction over All American.

### A. Relatedness

To satisfy the relatedness prong, A Corp. must show a nexus between its claims and All American's forum-based activities. Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011). Although this is a "relaxed standard," it nevertheless requires us to hone in "on the relationship between the defendant and the forum." Id. (citing Hannon v. Beard, 524 F.3d 275, 283 (1st Cir. 2008)).

---

[6] Although the district court appeared to ground its dismissal on A Corp.'s failure to establish that All American had purposefully availed itself of the forum, we will address each prong in brief.

A Corp. argues that the relatedness prong is satisfied here because All American posted A Corp.'s trademark, or a confusingly similar mark, on its website -- available in Massachusetts -- causing injury to the trademark owner in Massachusetts. But, in fact, what A Corp.'s allegations more precisely establish is that any injury occurs in Arizona where A Corp.'s Arizona franchisee potentially loses business, with the effect that this out-of-state injury might eventually be felt by A Corp. in Massachusetts where it resides. This type of indirect effect of out-of-state injury caused by out-of-state conduct is insufficient to fulfill the relatedness prong. See, e.g., Sawtelle v. Farrell, 70 F.3d 1381, 1390-91 (1st Cir. 1995) (concluding that in-forum effects of non-forum activity, standing alone, were insufficient to support personal jurisdiction).

As any potential Massachusetts effects are ancillary to the alleged out-of-state injury, we conclude that there is an insufficient nexus in this case between A Corp.'s claims and All American's one and only forum contact -- the availability of its website. Cf. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001) (noting that "there can be no requisite nexus between the contacts and the cause of action if no contacts exist"). But even if A Corp. had carried its burden to show relatedness, it would fall at the next hurdle.

**B.  Purposeful Availment**

The purposeful availment inquiry is intended "to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state."  Sawtelle, 70 F.3d at 1391 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).  Rather, we focus on the defendant's intentionality, and the cornerstones of purposeful availment -- voluntariness and foreseeability.  See id.  Here, A Corp. argues, in essence, that All American purposefully availed itself of the forum because its alleged infringement targeted a Massachusetts company.  But "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  Walden v. Fiore, 134 S. Ct. 1115, 1125 (2014).

As we have already noted, A Corp. has offered only one real contact between Massachusetts and All American -- All American's use of a website that is accessible from everywhere in the world, including Massachusetts.  And although the website is accessible in Massachusetts, it never mentions Massachusetts and affords no mechanism for Massachusetts residents to order any goods or services.  The website offers no genuine "interactive" features, functioning more like a digital billboard, passively advertising the business and offering an email address, fax and phone number.  Moreover, All American's advertised services are available only in

- 10 -

Arizona -- since All American is only licensed to provide plumbing services in that state -- and All American has never performed any plumbing services or conducted any business in Massachusetts. This is not enough to show purposeful availment.

A Corp. heavily relies on a district court's decision in Venture Tape Corp. v. McGills Glass Warehouse, 292 F. Supp. 2d 230 (D. Mass. 2003), to support its argument that the "something more" required, see McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005), to establish personal jurisdiction based on interactive websites is met in trademark infringement cases when the "target of the alleged infringement" is a forum company. Venture Tape, 292 F. Supp. 2d at 233 (relying on Calder v. Jones, 465 U.S. 783, 789-90 (1984), which held that those responsible for an article about a California-based celebrity "knew that the brunt of that injury would be felt by respondent in [California]" and therefore should "reasonably anticipate being haled into court there"). But the website at issue in Venture Tape allowed users "to place orders" for "various products," id. at 231, and was, therefore, actually "interactive," whereas All American's website is not.

Although this court has not explicitly considered the issue of purposeful availment in trademark infringement cases such as Venture Tape, where the only alleged contacts are (1) an interactive website available in the forum state and (2) that the allegedly-infringed trademark is owned by a forum company, on the

- 11 -

facts of the present case, we can, at a minimum, reject the broadest reading of Venture Tape, and conclude that, certainly, the mere availability of a passive website, even one containing an allegedly-infringed trademark owned by a forum company, cannot, standing alone,[7] subject a defendant to personal jurisdiction in the forum. See, e.g., ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 714-15 (4th Cir. 2002) (concluding that an internet service provider's activities were passive and did not support the exercise of personal jurisdiction); GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (concluding that "personal jurisdiction surely cannot be based solely on the ability of [forum] residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the [forum]"); Mink v. AAAA Dev. LLC, 190 F.3d 333, 337 (5th Cir. 1999) (explaining that a similar website was little "more than passive advertisement which [was] not grounds for the exercise of personal jurisdiction"). This is especially true "[g]iven the

---

[7] A Corp. attempts to rely on the fact that the Yellow Pages once mistakenly linked All American's electronic Yellow Pages advertisement to A Corp.'s website, and that All American's website often appears near A Corp.'s website following certain website browser searches. But the "unilateral activity of . . . a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984).

'omnipresence' of internet websites." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 35 (1st Cir. 2010) (quoting McBee, 417 F.3d at 124). To conclude otherwise, even if restricted to trademark infringement cases, could improperly erode important limits on personal jurisdiction over out-of-state defendants.

### C. Reasonableness

Finally, to assess reasonableness, we would generally consider:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

C.W. Downer & Co., 771 F.3d at 69 (alteration in original) (quoting Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir.1994)). But these factors are only "intended to aid the court in achieving substantial justice," and play a larger role in close cases. Adelson v. Hananel, 510 F.3d 43, 51 (1st. Cir. 2007); see also Ticketmaster, 26 F.3d at 210 (explaining that "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction"). Accordingly, we need not dwell on these so-called "gestalt" factors

- 13 -

here.  <u>Ticketmaster</u>, 26 F.3d at 209.  Having concluded that A Corp. failed to satisfy the first two prongs of the due process inquiry, its argument for specific jurisdiction fails.

For the reasons discussed above, the district court's dismissal for lack of personal jurisdiction is affirmed.  Costs to the appellee.